UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **R+L CARRIERS, INC., et al.** | ) | CASE NO: 1:09cv771 |
| | ) | |
| Plaintiffs, | ) | JUDGE Barrett |
| | ) | |
| vs. | ) | |
| | ) | |
| **JOE ALBELO** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Fed. R. Civ. Pro. 65, R+L Carriers, Inc. and R+L Carriers Payroll, LLC (Collectively "R+L") respectfully requests that this Court issue immediate injunctive relief against a former high level trusted employee, defendant Joe Albelo ("Albelo"), to stop his ongoing threatened and actual misappropriation of R+L's confidential and trade secret information. The reasons in support of this motion are set forth in the accompanying memorandum.

Respectfully submitted,

_Anthony C. White by Diane M Godwin_
Anthony C. White            (0062146)
*Trial Attorney*
O. Judson Scheaf, III       (0040285)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101

Tel: (614) 469-3200
Fax: (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com

Diane M. Goderre            (0069848)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio  43202
Tel: (513) 3526760
Fax: (513) 241-4771
Diane.Goderre@ThompsonHine.com

*Attorneys for Plaintiff R+L Carriers, Inc.*

Case 1:09-cv-00771-MRB   Document 2   Filed 10/22/09   Page 2 of 16

## **Memorandum in Support**

R+L Carriers, Inc. and R+L Carriers Payroll, LLC (Collectively "R+L") seek immediate injunctive relief against a former high level trusted employee, defendant Joe Albelo ("Albelo"), to stop his ongoing threatened and actual misappropriation of R+L's confidential and trade secret information. Upon learning of his termination on September 25, 2009, Albelo accessed his R+L issued computer and downloaded information from his R+L computer to an external storage device. Albelo had access to and the laptop contained R+L's trade secret and confidential information belonging exclusively to R+L that R+L maintains within its computer systems located in Ohio. This misappropriation provides Albelo with information that he may use for his financial gain that could divert business from R+L to Albelo's new employer.

R+L will suffer serious and irreparable harm as a result of Albelo's conduct. As set forth herein, R+L respectfully submits that this Court's immediate intervention is necessary to prevent such harm.[1]

II. **STATEMENT OF FACTS**

   A. **R+L**

R+L Carriers, Inc. and R+L Carriers Payroll, LLC are corporations organized and existing under the laws of the State of Ohio with their principal place of business located in Wilmington, Ohio. R+L is a local family-owned and operated company that has been in business for over 40 years with a service fleet of nearly 13,000 tractors and trailers. R+L Carriers, Inc. is the leading carrier in the highly competitive less than truckload ("LTL") freight industry. LTL freight involves transportation of freight for customers constituting less than an

---

[1] This Motion and Memorandum is supported by the affidavit of Steven A. Crandall, a copy of which is attached hereto as Exhibit A.

entire truckload. Accordingly, one truck will handle freight for several customers at a time to haul a full truck load.

R+L, from its headquarters in Wilmington, operates its business throughout the United States, including the western region of the United States where Albelo was Vice-President of Sales.

**B.     Albelo Agreed to Protect R+L's Business and Trade Secrets**

Albelo had been employed with R+L as Vice-President of Sales West with responsibility for sales in the western region of the United States since June of 2008. As an executive with R+L, Albelo had full knowledge and access to the company's sales operations and confidential and trade secret information. As part of his employment with R+L, he agreed to protect and not disclose its confidential and trade secret information.

**C.     R+L Takes Additional Steps to Protect Its Trade Secrets**

R+L employs takes multiple steps to limit access to its computerized information. Employees are required to enter both a user ID and pass code to gain access to company. Those without the appropriate codes would be denied access.

**D.     Albelo Served as a Top Level R+L Employee**

From on or about June 17, 2008 until his termination on September 25, 2009, Albelo served as Vice-President of Sales West with responsibility for sales in the western region of the United States. As a high-level R+L management employee, Albelo was responsible for business sales strategies for R+L's transportation services. Albelo prepared and participated in high level planning for R+L's business operation throughout the western United States. He created reports, received information, and participated in countless meetings regarding:

- Strategic plans
- Budgeting

- Sales volume
- Operating ratios

While at R+L, Albelo had access to R+L's most important, closely held competitive and financial information. For example, Albelo worked with and developed a detailed and comprehensive intimate knowledge of trade secrets such as (1) financial and sales reports, (2) strategic planning documents, (3) the substance of presentations to customers and potential customers, (4) profit margin information, (5) lists of customers and (6) other aspects of R+L's business strategies and operations.

### E.  Upon Termination, Albelo Downloaded R+L's Confidential and Trade Secret Information

Upon learning of his termination on September 25, 2009, Albelo accessed his R+L issued computer and downloaded information from his R+L computer to an external storage device. Upon review of that laptop, it is clear that Albelo also deleted some 8.5GB of data from the documents folder on that drive. Upon information and belief, Albelo has taken R+L's trade secrets for his own personal gain.

## III.  PLAINTIFFS' ARE ENTITLED TO INJUNCTIVE RELIEF

### A.  Legal Standard

A court should consider four factors in determining whether to issue injunctive relief: (1) whether there is a substantial likelihood that the movant will prevail on the merits; (2) whether irreparable harm will be suffered if the injunction is not granted; (3) whether third parties will be unjustifiably injured by the granting of the injunction; and (4) whether granting the injunction serves the public interest. *Vanguard Transp. Sys. Inc. v. Edward Transfer & Storage Co.*, 109 Ohio App. 3d 786 (Franklin Cty. 1996). No one factor is dispositive. Rather, the Court should balance the four factors "with the flexibility which has traditionally

characterized the law of equity." *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14 (Cuyahoga Cty. 1996) (internal quotations omitted).

Here, R+L is entitled to injunctive relief. As explained fully below, Albelo's misappropriation of R+L's most recent confidential business information/trade secrets will irreparably harm R+L and the inevitable continued use of this information by Albelo provides him and any new employer a substantial unfair advantage that the law prohibits.

**B.    R+L Is Likely To Succeed on the Merits of All of Its Claims**

R+L is substantially likely to prevail on the merits of its trade secret claim under R.C. § 1333.61 *et. seq.* R+L need only show: (1) the existence of a trade secret, (2) acquisition of the trade secret through a confidential relationship, and (3) actual or threatened misappropriation. R.C. § 1333.61 and 1333.62. *See Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 274-275 (Hamilton Cty. 2000); *Alta Analytics, Inc. v. Muuss,* 75 F.Supp.2d 73, 785 (S.D. Ohio 1999). R+L can easily establish the existence of these factors.

1.    <u>R+L's Trade Secrets</u>

Ohio statutorily defines a "trade secret" as:

> [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. § 1333.61(D).

Trade secrets are not limited to the actual hard copy files and data that have been taken by Albelo in this case. To the contrary, the significant reach of the Ohio Uniform Trade Secrets Act recently was confirmed by the Ohio Supreme Court in *Ai Minor & Assoc., Inc. v. Martin*, 117 Ohio St.3d 58 (2008). In that case, the Court held that even memorized trade secrets warrant protection:

> Information that constitutes a trade secret pursuant to R.C. 1333.61(D) ***does not lose its character as a trade secret if it has been memorized***. It is information that is protected by [the Uniform Trade Secrets Act], regardless of the manner, mode, or form in which it is stored-whether on paper, in a computer, in one's memory, or in any other medium.

*Id.* at 64. (Emphasis added.)

Here, the existence of trade secret information is manifest. Albelo was privy to strategic plans, business strategies and processes, unique customer information, and other confidential and business proprietary information not publicly available. In addition to the unique information he acquired through the client relationships he fostered and established by virtue of his R+L employment, as a top level management employee, Albelo had access to the most highly coveted and confidential sales information in the company. He routinely reviewed R+L's strategic plans, business processes, customer lists, top client lists and other documents containing inside information unique to R+L. Through various sales reports, Albelo knows when various R+L's customer's contracts are set to expire and that therefore the customers are in the market for transportation services. This is the life blood of a sales operation.

It is exactly this type of trade secret information that Albelo apparently walked away with upon his termination. R+L derived independent economic value from this information not being generally known by its competitors. (Id.) R+L also has expended significant resources and effort developing this confidential and trade secret information. (Id.) Ohio law protects this

information from even the threat of misuse. By definition, "business information or plans, financial information or listing of names, addresses or telephone numbers" are statutory trade secrets. R.C. §1333.61(D). Indeed, in the transportation industry, customer lists have been held by the Franklin County Court of Appeals to be "an intangible asset which an owner may keep from its competitors," and the court has further held that there "is a presumption of secrecy regarding a customer list when an owner thereof takes measures to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner." *Vanguard Transp. Sys., Inc., v. Edwards Transfer & Storage Co.*, 109 Ohio App. 3d 786, 791(Franklin Cty. 1996). Further, contract rates, driver information, and shipper information within the trucking industry have been considered trade secrets that may be protected through injunctive relief. *Id.*

R+L also took reasonable efforts to maintain the secrecy of its confidential information. Among other things, R+L employed passwords and limited access to highly sensitive information. This is sufficient as a matter of law to garner trade secret protection. *See Valco Cincinnati, Inc. v. N & D Machining Services, Inc.*, 24 Ohio St.3d 41 (1986) (security efforts such as locking doors, limiting access to documents, and having employees execute confidentiality agreements are reasonable measures to ensure a documents secrecy); *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000) (limiting access to cost and price files as well as customer information reasonable efforts to maintain secrecy). Thus, R+L has shown that there are trade secrets warranting protection.

    2.    <u>Albelo Acquired Access to R+L's Trade Secret Information</u>

There can be no dispute that Albelo acquired access to trade secret information through his employment relationship with R+L. As noted above, it was through his top-ranking position

that he was privy to R+L's most current confidential and trade secret information. This is evident by the fact that Albelo downloaded the entire hard drive of the laptop computer that R+L supplied him during his employment upon termination.

### 3. The Threat of Harm is Sufficient for Injunctive Relief

Under Ohio statutory and common law, a plaintiff does not have to establish actual harm (e.g., actual unauthorized use of a trade secret) to establish the requisite harm to succeed on misappropriation of trade secrets claim. The mere threat of harm is a sufficient basis for injunctive relief. *See* R.C. 1333.62(A) ("Actual or threatened misappropriation may be enjoined."); *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000). Misappropriation involves the acquisition of trade secrets through improper means or the use or disclosure of trade secrets obtained through improper or unauthorized means. R.C. § 1333.61(B)(1) & (2). Here, the evidence demonstrates a credible threat of misappropriation of R+L's trade secret information.

Nefarious copying of information is enough for an injunction. As the court in Dexxon *Digital Storage, Inc. v. Haenszel* explained:

> R.C. 1333.62(A) provides that actual or threatened misappropriation of a trade secret may be enjoined. Therefore, the issuance of an injunction does not hinge on appellant's proving that the appellees used the trade secrets, as threatened misappropriation of a trade secret is sufficient to allow the trialcourt to enjoin future use.

161 Ohio App.3d 747, 755 (5th Dist. Ct. App. 2005). (emphasis added.) Here, by virtue of taking R+L's trade secret information and having it in his possession, the threat that this information will be disseminated to others or used against R+L is unequivocal and warrants injunctive relief.

Accordingly, R+L has established it is likely to succeed on the merits of its trade secret

claim, and, therefore, it is entitled to injunctive relief to protect it from future harm.

### C. In the Absence of Injunctive Relief R+L Will Suffer Irreparable Harm

Irreparable harm exists where there is no plain, adequate, and complete remedy at law and for which money damages would be impossible, difficult, or incomplete. *See Fraternal Order of Police v. City of Cleveland,* 141 Ohio App.3d 63, 81 (8th Dist. Ct. App. 2001). This is the exact situation present here. Misappropriation of trade secrets is irreparable harm. *See Procter & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 278-279 (1st Dist. Ct. App. 2000) (holding such actions are sufficient to establish hann warranting injunctive relief). Albelo has taken or will inevitably disclose R+L's sales data, financial data, operational information and unique customer information among other things. This information can be used to harm R+L in many ways. For example, Albelo can avoid the time consuming process of developing sales strategies and conducting market research on a major player in the market thus gaining an unfair competitive advantage. Armed with the confidential and trade secret information, he can attack R+L while employed at a competitor and attempt to undercut R+L for its customers' business based on its "inside" knowledge of R+L's sales information and strategies. This is irreparable harm.

Without the injunctive relief sought, R+L is forced to investigate each time it loses a customer to a competitor and then must bring a lawsuit and prosecute the action. This pattern of multiple legal actions could continue for months if not years if Albelo is not enjoined now.

### D. The Balance of Harm Favors Granting Injunctive Relief

The balancing of any potential harm also weighs in favor of the issuance of injunctive relief against Albelo. Without an injunction, Albelo can use

R+L's confidential and trade secret information to obtain employment with a competitor and thereby solicit R+L's customers with whom he established special relationships (while being paid by R+L), and will continue to purposely (or inevitably) disclose confidential and trade secret information. The harm to R+L will be substantial, and if Albelo is successful in wrenching away business from R+L through unfair means, the potential outcome may result in innocent R+L employees losing their jobs.

By contrast, there will be no harm to the third parties (or even defendant) in requiring Albelo to comply with his legal obligations. Indeed, the Proposed Order seeks only to fashion fair competition.

### E. The Public Interest Would Be Served By the Issuance of Injunctive Relief

Ohio law recognizes that the public interest is served by the protection of trade secrets, confidential business information and in preventing unfair competition. *UZ Engineered Products Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App. 3d 382 (Franklin Cty. 2001). Thus, the public interest will be served by enjoining Albelo.

### IV. CONCLUSION

For all the foregoing reasons, this Court should grant R+L's Motion for a Temporary Restraining Order and Preliminary Injunction.

                                      Respectfully submitted,

                                      *Anthony C. White* by *Diane M...*
                                      Anthony C. White         (0062146)
                                        *Trial Attorney*
                                      O. Judson Scheaf, III     (0040285)
                                      THOMPSON HINE LLP
                                      41 South High Street, Suite 1700
                                      Columbus, Ohio 43215-6101

Tel:   (614) 469-3200
Fax:  (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com

Diane M. Goderre            (0069848)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio  43202
Tel:   (513) 3526760
Fax:  (513) 241-4771
Diane.Goderre@ThompsonHine.com

*Attorneys for Plaintiff R+L Carriers, Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Motion for a Temporary Restraining Order* along with the *Complaint* was served on October 22, 2009, via First Class U.S. mail and email delivery, upon the following:

Albert E. Haverkamp
4350 Executive Drive, Suite 260
San Diego, 92121
AHaverkamp@lucashaverkamp.com
*Attorney for Joe Albelo*

 

                                                                           _____
                                                                           Diane Goderre

## CERTIFICATE OF NOTIFICATION

    I hereby certify, pursuant to Local Rule 65.1, that Plaintiffs R+L Carriers, Inc. and R+L Carriers Payroll, LLC (collectively "R+L") have served a copy of this Motion for Temporary Restraining Order along with all other pleadings filed in this action upon Albert E. Haverkamp, Esq., counsel for Defendant Joe Albelo, via email and Federal Express, this 22nd day of October, 2009.

                                             */s/ Anthony C. White* by *Diane M. God—*
                                             Anthony C. White

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **R+L CARRIERS, INC., et al.** | ) | CASE NO: _____ |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| **JOE ALBELO** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF STEVEN A. CRANDALL

STATE OF OHIO         :
                      : SS
COUNTY OF CLINTON     :

Steven A. Crandall, having been first duly sworn and cautioned, does hereby depose and say:

1. I am the Director of e-Business and Web Technologies for R+L Carriers, Inc. ("R+L").

2. My job duties include, among other things, managing R+L's electronically stored information ("ESI").

3. I am aware that on September 25, 2009, Mr. Joe Albelo ("Albelo") was terminated from his position with R+L.

EXHIBIT A

4. On or about October 12, 2009, I reviewed Albelo's laptop computer and noted that Albelo had his laptop set to automatically copy the entirety of his laptop data files weekly to an external hard drive.

5. My review of the laptop also disclosed that Albelo had attempted to delete 8.5GB of data from the documents folder of his laptop. I have not yet had an opportunity to review all information that Albelo attempted to destroy.

5. Among the information available on his laptop, Albelo had access to R+L's confidential and proprietary trade secrets including, but not limited to, strategic plans and information regarding R+L's business operations and processes, including directors' reports, sales reports, profit margins, operating ratios, cargo claims, and service issues among others, as well as specific information regarding unique, non-public aspects of R+L's relationships with its customers. Albelo, through his laptop, had access to all information contained on R+L's mainframe as well.

AFFIANT STATES NOTHING FURTHER.

_____
Steven A. Crandall

Sworn to and subscribed in my presence on this 23rd day of October, 2009.

_____
Notary Public

2